O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES FOR AN ORDER PURSUANT TO 18 U.S.C. § 2705(b) | CASE NO. 11-2366M <br><br> ORDER DENYING APPLICATION FOR ORDER PURSUANT TO 18 U.S.C. § 2705(b) |

The United States has applied for an order that commands a provider of electronic communication service and/or a remote computer service not to notify its subscribers of a grand jury subpoena that the United States intends to serve on the provider. The subpoena seeks "subscriber information" of the sort listed in 18 U.S.C. § 2703(c) for three user accounts from April 1, 2011 to the present. After considering the matter and receiving briefing from the United States, the Court declines to issue the order.[1]

///

///

---

[1] The United States filed its application under seal. The Court's decision on the application rests on a pure question of law, and it is not necessary to discuss anything factual that names the provider or the subscribers to the provider. Therefore, there is no reason that the Court's decision need be placed under seal.

1  Section 2703, enacted as part of Title II of the Electronic Communications
2  Privacy Act of 1986, Pub. L. 99-508 (Title II is called "Stored Wire and Electronic
3  Communications and Transactional Records Access"), has several subsections.
4  Subsection (a) addresses contents of wire or electronic communications that are in
5  electronic storage. Subsection (b) addresses contents of wire or electronic communications
6  that are in a remote computing service. Subsection (c) address records concerning
7  electronic communication service or remote computing service; included here is
8  information as to the subscriber of such services. Subsection (d) allows for the obtaining
9  of a court order to implement either subsection (b) or (c). Information under both
10 subsections (b) and (c), however, also can be obtained by grand jury subpoena. In this
11 case, the Government intends to serve a grand jury subpoena for subscriber information of
12 the sort identified in section 2703(c).
13     With respect to grand jury proceedings, FED. R. CRIM. P. 6(e)(2) provides:
14
15     (A) No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B).
16 Rule 6(e)(2)(B) then lists seven categories of persons who must keep grand jury matters
17 secret, but a recipient of a grand jury subpoena is not one of them. Thus, the order that the
18 United States seeks is prohibited by Rule 6(e)(2).
19     The United States argues, however, that the explicit command of Rule 6(e)(2)
20 is trumped by 18 U.S.C. § 2705(b). The Court does not agree. Certainly section 2705 does
21 not contain an explicit overruling of Rule 6(e)(2); it does not mention the rule at all. In the
22 Court's view, the statute cannot properly be read as authorizing the Court to enjoin a
23 provider from revealing that it has received a grand jury subpoena. Section 2705 is entitled
24 "Delayed Notice," and by its terms addresses only disclosures made under section 2703(b),
25 which concern applications to obtain the contents of electronic communications, not
26 applications for subscriber information under section 2703(c).
27 ///
28 ///

Section 2705(b) provides:

> A governmental entity acting under section 2703, when it is not required to notify the subscriber or customer under section 2703(b)(1), or to the extent that it may delay such notice pursuant to subsection (a) of this section, may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in —
> (1) endangering the life or physical safety of an individual;
> (2) flight from prosecution;
> (3) destruction of or tampering with evidence;
> (4) intimidation of potential witnesses; or
> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

The plain reading of this statute is that the Government, acting under section 2703, may obtain an injunction against disclosure by the provider in two circumstances: when "it is not required to notify the subscriber or customer under section 2703(b)(1), or to the extent that it may delay such notice pursuant to subsection (a) of this section." This case falls into neither of those situations.

First, this is not a situation in which the governmental entity "is not required to notify the subscriber or customer under section 2703(b)(1)." The United States does not proceed here under section 2703(b)(1). That section applies to the disclosure of the contents of wire or electronic communications in a remote computing service, but the Government's subpoena does not seek the contents of any such communications here. It seeks only subscriber information, of the sort identified in section 2703(c).

Second, this is not a situation in which the Government "may delay such notice pursuant to subsection (a) of this section," *i.e.*, section 2705(a). Section 2705(a) applies specifically to situations in which the Government is "acting under section 2703(b)," again referring to disclosure of the content of communications. As noted, however, the Government does not seek relief under section 2703(b).

-3-

Upon reviewing the Government's application, the Court asked the United States to submit a brief in support of its position that the Court has authority to enjoin the provider from disclosing the existence of the grand jury subpoena at issue here. The United States subsequently filed a brief in support of its position, which the Court has fully considered; of course, since the application was received *ex parte*, there was no party to present any opposing point of view.[2] Nevertheless, the Court does not find the position of the United States to be persuasive.

The United States puts forth the following interpretation of the statute:

> The first clause of section 2705(b) makes clear that section 2705(b) applies any time the government is "acting under section 2703." . . .
> The second and third clauses of section 2705(b) ("when it is not required to notify the subscriber or customer under section 2703(b)(1), or to the extent that it may delay such notice pursuant to subsection (a) of this section") create an exception for when the government can invoke section 2705(b). The government cannot invoke section 2705(b) when it is required to give notice to the subscriber under section 2703(b)(1)(B) (that is, when it uses a subpoena or section 2703(d) order to compel disclosure of content), unless the government is entitled to delay that notice pursuant to section 2705(a). For example, when the government seeks a warrant pursuant to section 2703(a), the warrant falls within the scope of section 2705(b) because the government is "acting under section 2703" and "not required to notify the subscriber or customer under section 2703(b)(1)." Similarly, a section 2703(c) subpoena falls within the scope of section 2705(b) because the government is "acting under section 2703" and "not required to notify the subscriber or customer under section 2703(b)(1)." In fact, section 2703(c)(3) explicitly states that "a governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer."

Thus, the United States reads the statute as first stating a general rule that it *can* obtain an injunction against disclosure, and then stating exceptions to the general rule, with the result that the Government may obtain an injunction against disclosure any time that it acts under any section of 2703, except in the circumstances when it *is* required to

---

[2] The United States filed the brief under seal. The portions the Court quotes from the brief address only statutory interpretation, and do not identify the provider or the subscribers to the provider.

notify the subscriber or customer (whether initially, or ultimately, after giving delayed notice). There are several reasons that the Court does not agree with this interpretation.

First, the statute just does not say that. It would have been a simple matter to say if that had been the statute's scope. As will appear later, Congress understood exactly how simply it could state such a prohibition on disclosure by a provider, if that had been its intention.

Second, the structure of the statute does not support the Government's construction of the statute. Title II of the Act, as enacted in 1986, contained ten sections, the first five of which, and a later provision, have some pertinence to this discussion. Section 2701 made it unlawful to obtain access to stored communications, except in certain circumstances. Section 2702 prohibited the provider from disclosure of the contents of a communication while in electronic storage or that was carried or maintained on a remote computing service. Section 2703, as previously noted, had several subsections, the first two of which addressed contents of electronic communication, the third of which addressed records of communications, and the fourth of which addressed requirements for a court order. Section 2704 provided for the creation of a backup copy of the contents of communications that are sought in a subpoena or court order for such contents. Section 2705, titled "Delayed Notice," as previously indicated had two subsections; the first provides for delay of notice where content of communications is sought, and the second contains the authorization in certain circumstances for restraining disclosure by the provider. Section 2709 provides for the provision of subscriber information and toll billing records information, or electronic communication transactional records, to the FBI pertinent to counterintelligence.[3]

///

///

---

[3] The remaining sections provided for cost reimbursement (§ 2706), circumstances under which civil actions can be brought (§ 2707), defining certain remedies as exclusive (§ 2708), and a listing of definitions (§ 2710).

The statute has been amended from time to time, and indeed, § 2703 itself has been amended 12 times.[4] The Court has reviewed each of those amendments; none changed the statute in any way material to the issue presented by this application. Section 2705 has not been changed at all; it remains the same as it was originally enacted in 1986.

It is clear from reviewing the first five sections enacted by Title II that section 2705's reference to 2703(b) — that is, its reference to applications seeking content, not subscriber records — is not some obscure way of referring to exceptions to a general rule allowing injunctions against provider disclosure, but rather is a quite deliberate delineation of the limited circumstances in which such injunctions may issue. The statutes enacted by Title II of the Act for the most part refer to applications for content, and clearly distinguish between such applications and applications for subscriber information. In proceeding from defining when it is unlawful to obtain access to stored communications (§ 2701) to prohibition of disclosure where access is lawful (§ 2702) to identifying requirements that the Government must follow in order to obtain contents of communications (§ 2703(a) and 2703(b)) to the creation of back-up files (§ 2704), the Act focuses on content of communications. With this overwhelming focus on the *content* of communication — interrupted only briefly by section 2703(c)'s provision concerning subscriber records — it is not surprising that the subsequent section, § 2705(a) provides for delay of notice in certain circumstances when *content* of electronic communications is sought. Thus, when the next subsection, § 2705(b), refers to applications for content, it is consistent with the statutory scheme to read the reference as setting the conditions for when, upon the granting of those applications, the Court also may enjoin the provider from disclosing the existence

---

[4] Pub. L. 100-690, Title VII, §§ 7038, 7039 (November 18, 1988); Pub. L. 103-322, Title XXXIII, § 330003(b) (September 13, 1994); Pub. L. 103-414 , Title II, § 207(a) (October 25, 1994); Pub. L. 104-132, Title VIII, § 804 (April 24, 1996); Pub. L. 104-293, , Title VI, § 601(b) (October 11, 1996); Pub. L. 104-294, Title VI, § 605(f) (October 11, 1996); Pub. L. 105-184, § 8 (June 23, 1998); Pub. L. 107-56m Title II, §§ 209(2), 210, 212(b)(1), 220(a)(1), 220(b) (October 26, 2001); Pub. L. 107-273, Div. B, Title IV, § 4005(a)(2), Div. C, Title I, § 11010 (November 2, 2002); Pub. L. 107-296, Title II, § 225(h)(1) (November 25, 2002); Pub. L. 109-162, Title XI, § 1171(a)(1), (January 5, 2006); Pub. L. 111-79, §2(1) (October 19, 2009).

of the order. The reading by the Government — that section 2705(b)'s reference to applications for content represents an exception to a general authorization for issuing an injunction against disclosure — does not take into account the Act's overwhelming orientation toward the content of communications, as set forth in the prior statutory references. A statute, of course, is to be read as a whole, giving meaning to all its parts. *See Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991), *citing* SUTHERLAND, STAT. CONST. §§ 46.05, 46.06 (4th ed. 1984).

But there is an additional problem with the Government's construction of the statute. Congress knew how to create exceptions to statutory commands, and showed that it knew how to do so by other provisions in this very Act. Thus, in subsection (a) of section 2701, Congress created an offense; in subsection (b) it created a punishment for the offense; and in subsection (c), explicitly entitled "Exceptions," it enumerated exceptions to the offense. Likewise, in subsection (a) of section 2702, Congress defined prohibitions, and in subsection (b), explicitly titled "Exceptions," it set forth exceptions to the prohibitions. It is not reasonable to infer that Congress would create exceptions to a general rule so explicitly in these subsections and then turn right around, three sections later, and indirectly create exceptions in section 2705(b) in the method that the Government advocates here. *Cf. N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 522-23, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1984) ("Obviously, Congress knew how to draft an exclusion for collective-bargaining agreements when it wanted to; its failure to do so in this instance indicates that Congress intended that § 365(a) apply to all collective bargaining agreements covered by the NLRA."); *see also United States v. Johnson*, 529 U.S. 53, 58, 120 S. Ct. 1114, 146 L. Ed. 2d 39 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference, and the one we adopt here, is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.")

Moreover, in two places within this very Act Congress did authorize a restraint on the provider's ability to disclose, and in each case the statute is clear and

unequivocal, not the sort of indirect meaning that the Government advocates for here. The first instance appears in section 2709, part of the same title of the Act. There Congress authorized high individuals of the FBI to request information and records from a provider upon a written certification that the information sought is pertinent to a foreign counterintelligence investigation and that there are specific and articulable facts indicating that the person or entity to whom the information relates is a foreign agent. Section 2709(c) of the Act then provides explicitly that "[n]o . . . provider . . . shall disclose to any person that the Federal Bureau of Investigation has sought or obtained access to information or records under this section." By subsequent amendment, the kinds of information sought have been enlarged, but the authorization to restrain the provider from disclosure still remains, and still remains in this very explicit language.[5]

Just as important, as a guide for interpreting section 2705(b), are the provisions in Title III of the Act. As part of the same Act that put sections 2703 and 2705 in the statute book, Congress enacted "Title III—Pen Registers and Trap and Trace Devices." As its name implies, that Title authorized the use of pen registers and trap and trace devices. Section 3121 prohibited the use of pen registers and trap and trace devices without a court order, and then explicitly set forth certain exceptions. Again, Congress demonstrated that, when it meant to create exceptions to a rule, it did so explicitly. Even more telling, from an interpretive standpoint, is the statute that Congress enacted for non-disclosure of a court order authorizing the pen register and the trap and trace device:

> An order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that —
> (1) the order be sealed until otherwise ordered by the court; and
> (2) the person owning or leasing the line to which the pen register or a trap and trace device is attached, or who has been ordered by the court to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device

---

[5] The statute now allows the provider to disclose the request to persons the provider needs to contact to implement the request, and to attorneys for the purpose of seeking legal advice. 18 U.S.C. § 2709(c)(1).

        or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court.

Pub. L. 99-508, Title III, enacting 18 U.S.C. § 3123(d).

        Thus, in the very same Act where Congress enacted 18 U.S.C. § 2703, which provides for Government access to electronic communications, Congress also authorized another investigative technique, pen registers/trap and trace devices. In the very same Act, at the very same time, Congress made explicit that the provider was restrained from disclosing the existence of the pen register/trap and trace device. Congress knew how to restrain disclosure when it meant to do so. It is not reasonable to interpret section 2705(b) as providing the same clear proscription that section 3123(d) provides.

        The Government makes two additional arguments in support of its position, but neither is persuasive.

        First, citing to *United States v. Lazarenko*, 624 F.3d 1247, 1251 (9th Cir. 2010), and *Nesovic v. United States*, 71 F.3d 776, 773 n.3 (9th Cir. 1995), for the proposition that the Court should not interpret a statute in accordance with its plain language if such an interpretation would work an absurd result, the Government argues that any interpretation of section 2705(b) other than its own "would lead to a very strange result." This strange result, the Government argues, is that the Government "could preclude a remote computing service from notifying a customer when the government obtained <u>content</u> from the remote computing service under section 2703(b), but it could not preclude the remote computing service from notifying the customer when it obtained any <u>non-content</u> information under section 2703(c)." Government's Briefing at 3:20-25 (emphasis in original). The Government may find the result strange now, but Congress could have found the distinction to be rational. Congress could well have thought that there was a greater need to prevent the provider from telling its customer that the Government had obtained the contents of the customer's communications than there was to prevent the provider from telling the customer that the Government had obtained the records as to who the subscriber was, where he lived, and so on. If Congress had said that

the provider could be enjoined from disclosing any effort to obtain anything — either content or records — that would have been rational too, but the fact that Congress made distinctions does not make the application of the statute's language "absurd" or "strange."

Second, the Government argues that the legislative history supports its interpretation. Legislative history, of course, cannot change the meaning of a statute, and there is much disagreement in the cases as to whether it can play a role in illuminating the meaning of a statute. *See, e.g., Conroy v. Aniskoff*, 507 U.S. 511, 518 n.12 (1993) (Stevens, J., for the Court, responding to Scalia, J., concurring); *United States v. Thomson/Center Arms Co.*, 504 U.S. 505, 516 n.8 (1992) (Souter, J., for the Court, responding to Scalia, J., concurring); *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 610-12 n.4 (1991) (White, J., for the Court, responding to Scalia, J., concurring); *see also* A. Kozinski, *Should Reading Legislative History Be An Impeachable Offense?*, 31 SUFFOLK U. L. REV. 807 (1998); S. Breyer, *On the Uses of Legislative History in Interpreting Statutes*, 65 S. CAL. L. REV. 845 (1992). But, to the extent that the Government relies on legislative history to support its position here, the Court disagrees. At best that history sheds no greater light on the interpretation of the statute at issue. In fact, read in context, it supports the Court's interpretation.

Senate Report No. 99-541, 1986 U.S.C.C.A.N. 3555, 1986 WL 31929, addresses the bill that eventually became law. It identifies the purpose of the bill as the protection of privacy, given the advances in technology that had been made since earlier legislation was enacted. With respect to Title II, the report states that it was "modeled after the Right to Financial Privacy Act, 12 U.S.C. 3401 et seq. to protect privacy interests in personal and proprietary information, while protecting the Government's legitimate law enforcement needs." 1986 U.S.C.C.A.N. at 3557, 1986 WL 31929 at **3.[6] In a section

---

[6] The Financial Privacy Act contained numerous provisions for requiring disclosure of attempts to obtain financial records. 12 U.S.C. § 3401 *et seq.* Situations in which the provider was prevented from such disclosure were limited. *See, e.g.,* 12 U.S.C. § 3414(a)(3) (disclosure (continued...)

marked "Statement," the report heavily discusses the need to protect privacy as technology advances, with the most direct statement being the following: "Most importantly, the law must advance with the technology to ensure the continued vitality of the fourth amendment. Privacy cannot be left to depend solely on physical protection, or it will gradually erode as technology advances. Congress must act to protect the privacy of our citizens. If we do not, we will promote the gradual erosion of this precious right." *Id.*, 1986 U.S.C.C.A.N. at 3559, 1986 WL at **4. Judged by the legislative history, the primary purpose of the statute was to protect the privacy of citizens.

The Section-by-Section analysis of the statute contains a description of the provisions of section 2703. In its description of section 2705, the report begins "This proposed section provides procedures and requirements for implementation for a delay of notice to the customer or subscriber that his records are being sought or have been provided to a government entity." *Id.*, 1986 U.S.C.C.A.N. at 3595, 1986 WL at ** 41. The next five paragraphs of the report discuss the delay period that is provided for in 2705(a), which is delay of notification that the Government has sought the contents of communications under 2703(b). Then, in the last paragraph of this section, the report states:

> Subsection [2705](b) provides that if a governmental entity has delayed notice or has not been required to give notice under the provisions of section 2703, then the governmental entity may also apply to the court for an order commanding a provider . . . not to notify any pe[r]son of the existence of the warrant, subpoena, or court order. The court is required to enter such an order to prevent disclosure by the service provider if notification of the existence of the warrant, subpoena, or court order will result in any of the five adverse results listed in this subsection. The entity must apply to a court for preclusion under this subsection, even if the underlying process—an administrative subpoena, for example—does not require a court order.

---

[6](...continued)
by financial institution prohibited when requests made by Government authorities conducting foreign intelligence activities or by the Secret Service for the purpose of conducting its protective functions.)

*Id.*, 1986 U.S.C.C.A.N. at 3596, 1986 WL at ** 41. The Government sees this statement as supporting its interpretation, but the statement does not stand alone. Rather, the statement follows a discussion of the other part of section 2705, the portion providing for delay of notice, but only referring to such delay for contents of the communications. Read in the context of the rest of the section of the report, therefore, the statement that "if a governmental entity has delayed notice or has not been required to give notice under the provisions of section 2703" is a reference to the prior discussion of section 2705, which focuses on applications to obtain the content of communications. Thus, in context, this statement supports the interpretation that the provider can be precluded from disclosure with respect to the other matters referenced in the section — applications for content — but not for all matters referenced in section 2703.

The House Report, prepared earlier, is similar to the Senate Report. House Report 99-647 (June 19, 1986). It too notes the technological changes since the last legislation and the need for privacy protection. *See, e.g.*, House Report at 18-19. Like the Senate Report, the House Report provides a section-by-section analysis, but again the matters are more descriptive of the statutory provisions than revealing of latent legislative intent. Again, the Government points to statements about the reach of section 2705(b), *see* House Report at 72, but again those comments need to be read in context. Indeed, the House Report describes the circumstances under which the provider can be restrained from notifying the customer as "a narrow set of circumstances." *Id.* The Government's interpretation, however, would not be narrow, but extremely broad. As with the Senate Report, the House Report does not support the Government's position.

It may be that Congress can be convinced to adopt the Government's position, and enact legislation that authorizes an injunction against the provider in all the circumstances that the Government seeks. As presently written, however, the statutes do not contain that authorization. In contrast, however, the Rules of Criminal Procedure are

///

///

clear, that a rule of secrecy cannot be imposed in these circumstances. Accordingly, the Government's application is denied.

IT IS SO ORDERED.

DATED:   October 20, 2011

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE